UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

IN RE:                                                    CASE NO. 16-26663-BKC-AJC

JUAN C. MORALES and                                       CHAPTER 11
MIRTHA MORALES,
*d/b/a* J.C. & C. ALF, LLC,

       Debtor(s).
_____/

MERFE CONSTRUCTION CORP.,

          Plaintiff,

v.                                                        Adversary Proceeding
                                                          Case No. 17-1120-AJC-A

JUAN C. MORALES and
MIRTHA MORALES,
*d/b/a* J.C. & C. ALF, LLC,

       Defendants,

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS COMPLAINT OBJECTING TO DEBTORS'
DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF DEBT**

      Plaintiff, MERFE CONSTRUCTION CORP. (hereinafter referred to as "Merfe" or

"Plaintiff"), pursuant to Fed.R.Civ.P. 12, files its Response to Defendants,' JUAN C. MORALES

and  MIRTHA MORALES, *d/b/a* J.C. & C. ALF, LLC, Motion to Dismiss Complaint. [D.E. 6].

**<u>Introduction</u>**

      In Plaintiff's Complaint Objecting to Debtor's Discharge and to Determine Dischargeability

of Debt against  Defendants,  JUAN C. MORALES ("Mr. Morales") and  MIRTHA MORALES

("Ms. Morales"), *d/b/a* J.C. & C. ALF, LLC ("J.C. & C. ALF")(jointly referred to as "the

Defendants"), it contends the Defendants should be denied a discharge of their debts based upon

-1-

violations of 11 U.S.C. §727(a)(2), (4)(A), (5) and (7).

Section 727(a) provides, in relevant part, that a debtor shall be denied a discharge if:

(2)    the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A)    property of the debtor, within one year before the date of the filing of the petition; or

(B)    property of the estate, after the date of the filing of the petition;
...

(4)    the debtor knowingly and fraudulently, in or in connection with the case—

(A)    made a false oath or account;

(5)    the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
...

(7)    the debtor has committed any act specified in paragraph (2)... (4), (5)... of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

## THE COMPLAINT'S FACTUAL ALLEGATIONS

### Factual Background – Pre-Petition Chronology of Events

1.    At ¶¶8-45 of the Complaint [D.E.1:3-11], Merfe provides a chronology of pre-petition facts and events which supports its contention that the Defendants should be denied a

discharged based upon 11 U.S.C. §727(a)(2), (4)(A), (5) and (7).

2.      At ¶8 [D.E.1:3], Plaintiff asserts that a Final Deficiency Judgment was entered against Ms. Morales ($460,477.58) in its favor, in the case of *Merfe Construction Corp. v. Mirtha Morales, et al*, Case No. 08-040150 CA 04. [**Exhibit "1"**[1]].  Merfe also asserts its filed its Judgment Lien with the Florida Secretary of State, initially on September 29, 2011, and again  on June 27, 2016 (No. J16000386098).  [Composite **Exhibit "2"**].  The Deficiency Judgment resulted from Ms. Morales' default on a promissory note, which was secured by a mortgage,  on April 30, 2008. [D.E. 1:3 at ¶¶9-10].  The default was followed by the filing of a mortgage foreclosure complaint [D.E. 1:3 at ¶10], after which Merfe moved for summary judgment on the foreclosure. [D.E. 1:3 at ¶11].

3.      At ¶12, the Complaint alleges that Ms. Morales began the first of a series transfers of property, quit claiming property, located at 680 West 15 Street, Hialeah, Florida, titled in her name to her husband, Mr. Morales, and her two adult children, as grantees, leaving her with no ownership interest in the property. [**Exhibit "3"**] [D.E. 1:3 at ¶12].

4.      Almost a year after the circuit court entered summary judgment of foreclosure [D.E. 1:4 at ¶13], on March 4, 2010, Ms. Morales supposedly executed  a "Satisfaction of Mortgage" [**Exhibit "4"**] as to a partial assignment of mortgage ($300,000 of a $950,000 mortgage and note; where the mortgagor is Centro Evangelistico La Roca Church ("the Church")) she obtained in 2007 [Composite **Exhibit "5"**[2]], in which she represented the monies owed her were paid her in full.[D.E.

---

[1]The exhibits referenced herein are those which are attached to Plaintiff's Complaint.

[2]

On August 31, 2007, Centro Evangelistico La Roca Church, Inc. ("the Church") signed a promissory note and mortgage for $950,000 in favor of Group Investors, LLC.  On September 6, 2007, Group Investors, LLC, partially assigned $300,000 (31.79%) of the Church's mortgage to Ms. Morales. The other partial assignments made on September 6, 2007, were to JOSE RAUL PERUYERA and

1:4 at ¶14].  Ms. Morales' brother and attorney, Guillermo Perez, Esq. claimed he witnessed her sign

the satisfaction; that he signed it as well, and it was notarized by Gloria Michel, his employee.  *Id.*

The satisfaction of mortgage was not recorded until 409 days later, on June 10, 2011.  [**Exhibit**

**"4"**].[D.E. 1:5 at ¶16].   A little more than two months later, the circuit court entered the

aforementioned Final Deficiency Judgment.  [**Exhibit "1"**].[D.E. 1:5 at ¶18].

     5.    The Complaint alleges that after the satisfaction of mortgage was recorded that Ms.

Morales brother, Mr. Perez, claimed that his company, Group Lenders, LLC, was the holder of the

$300,000 mortgage, not Ms. Morales.  [D.E. 1:5 at ¶19].  At approximately this time, Merfe had

begun execution efforts [D.E. 1:5 at ¶20], and moved to levy on the partial assignment of mortgage.

When Merfe went to do so, Ms. Morales provided Merfe's lawyers with the aforementioned

satisfaction in open court. [D.E. 1:5 at ¶¶21-22].

     6.    The Complaint alleges that Merfe commenced proceedings supplementary. [D.E. 1:6

at ¶ 23], after which  Pastor David Bonilla, the Church's representative, testified that no part of the

mortgage had never been satisfied.  He testified that the Church never made a single  payment

towards the principal at all.  [D.E. 1:6 at ¶24].  In addition, Gloria Michel, the notary who supposedly

notarized the satisfaction, testified she did not work for Ms. Morales' brother, Mr. Perez, in March

of 2010, and that the notary stamp which appears on the satisfaction (dated March  4, 2010) was not

issued to her until *October 24, 2010.*  This was seven months *after* Ms. Morales supposedly signed

the satisfaction, meaning that it was impossible for the satisfaction to have been notarized back in

---

GLORIA PERUYERA ($100,000); MARGAB INVESTORS, INC. ($250,000); and  GROUP
LENDERS, LLC. ($300,000).  Two additional partial assignments, made in 2010, to SANCHEZ &
SON INVESTMENTS ($125,000) and JOSEFA RODRIGUEZ ($150,000) are also included, as well
as the Church note and mortgage, and Corrective Assignments relating to these assignments.
**Exhibit "5.**" See [D.E. 1:4 at fn 1;

March of 2010. [D.E. 1:6 at ¶¶25-26].   Then, in deposition, Ms. Morales finally admitted she was never paid anything towards principal on the assignment of mortgage.  [D.E. 1:6 at ¶27].

7.     The Complaint alleges the month after Ms. Morales admitted this, that Group Investors and Group Lenders (Ms. Morales' brother's companies), filed a foreclosure complaint against the Church (Case No. 15-9136 CA 01, to which Ms. Morales, represented by the same lawyer, filed an answered.  In answering Group Investors' foreclosure complaint,   Ms. Morales made no mention of the aforementioned satisfaction, and instead requested that the court in the foreclosure case pay her  that portion of the mortgage due her. [**Exhibit "8"**]  [D.E. 1:7 at ¶¶28-29].

8.     The Complaint also alleges that Plaintiff then moved for summary judgment. [D.E. 1:7 at ¶30].  At hearing, the presiding judge set aside the "Satisfaction of Mortgage," and reinstated the partial assignment of $300,000 to Ms. Morales, *nunc pro tunc* to the date the satisfaction was recorded. [**Exhibit "9"**] [D.E. 1:7-8 at ¶31].  In addition, the presiding judge awarded Merfe an equitable lien up to Ms. Morales' 31.579% interest ($300,000) in the Church mortgage. [**Exhibit "9"** at page 4]  [D.E. 1:7-8 at ¶31].

9.     Plaintiff also contends that the presiding judge in the proceedings supplementary entered a second Order granting Merfe summary judgment in the proceedings supplementary. [D.E. 1:9 at ¶39]. This order was entered on November 15, 2016, only a month before the Petition date, and voided the transfer of Ms. Morales membership interest in JC & C Investments, LLC  to her husband, Mr. Morales [D.E. 1:8 at ¶35], as  well as her subsequent deletion as a member, pursuant to Fla. Stat., §56.29. [D.E. 1:7-8 at ¶36].  Plaintiff alleged that this left Mr. Morales as sole member of JC & C Investments, LLC. [**Exhibit "10"**]. [D.E. 1:9 at ¶¶39-40].

10.     The Complaint further alleges, at ¶42 [D.E. 1:10], that on November 15, 2016, Merfe

filed its Motion for Order of Foreclosure Sale of Ms. Morales' Membership Interest in JC & C Investments, as to its sole asset, property located at 158 West 10 Street, Hialeah, Florida (the "158 Hialeah property"), [**Exhibit "11"**], which was noticed for hearing for December 19, 2017. [**Exhibit "12"**] [D.E. 1:10 at ¶¶42-43]. The hearing in the foreclosure motion was cancelled when the Defendants filed their Chapter 11 petition. [D.E. 1:11 at ¶44-45].

### The Bankruptcy Filings

### December 17, 2016

11.    In respect to Defendant's bankruptcy filings Plaintiff's complaint specifically identifies the fundamental issues arising from their representations, made under oath. For example, in their Voluntary Petition Form 101 dated December 17, 2016, the Defendants identified J.C. & C. ALF, LLC, but conceal any reference to JC & C Investments, LLC.[3] [Main Bankr. at D.E. 1:2] [D.E. 1:11 at ¶46].

12.    Merfe's Complaint contends that in Form 104 dated December 17, 2016, the Defendants identify Merfe as the largest "*unsecured creditor*"[4], "having a claim of $500,000 arising from Case No. 08-40150 (the proceedings supplementary), which they represent is contingent, unliquidated and disputed, and that there is no lien on property. [Main Bankr. D.E. 2:1, 6].

---

[3]

J.C. & C. ALF, LLC [D.E. 1:2; 10-1:2], of which Mr. Morales is sole member, operates an "assisted living facility" ("ALF") at 158 West 10 Street, in Hialeah.

[4]

Form 104 instructs to "not include claims by secured creditors," which Merfe is. In Florida, a judgment creditor becomes a secured creditor with respect to the Debtor's personal property—other than fixtures, money, negotiable instruments, and mortgages—the moment he filed the Judgment Lien Certificate. Fla. Stat. § 55.202(2). *In re Broward Kitchens & Baths, Inc.*, 429 B.R. 350, 352 (Bankr. S.D. Fla. 2010). Fla. Stat., §55.202, *Judgments, orders, and decrees; lien on personal property,*

Defendants know Merfe holds a money judgment and has an active judgment lien certificate filed with the Secretary of State. [D.E. 1:11 at ¶47].

13.     Merfe's Complaint also informs Defendants that the second largest unsecured creditor they identified, Margab Investors, LLC ("Margab"), and its claim of $250,000 against Ms. Morales, arising from a Crossclaim against Ms. Morales in Case No. 08-1405 (actually 08-40150). [Main Bankr. D.E. 2:1, 6] is a misrepresentation. Margab's claim actually arises from Group Investors, LLC partially assigning Margab $250,000 (26.32%) of the same Church mortgage ($950,000) it had assigned to Ms. Morales. [**Exhibits "5" and "13"**]. [D.E. 1:11-12 at ¶¶48-49].

14.     Plaintiff's Complaint also addresses the third largest unsecured creditor identified by Defendants, "Federated National Mortgage Association" ("Federated"), which supposedly has an unliquidated claim for $221,000, arising from a "[f]oreclosure [*sic*] of loan on real property.Case no. 09-4100, Circuit Court Miami-Dade county, Florida judgment and sale deficiency." [Main Bankr. D.E. 2:2, 6]. In its Complaint, Plaintiff alleges that the foreclosure judgment was entered in that case on August 11, 2009, in favor of Regions Bank, *dba* Regions Mortgage, and against the Defendants, but that no deficiency money judgment was ever entered. [D.E. 1:11-12 at ¶50].

### December 22, 2016

15.     The Complaint also alleges that on December 22, 2016, Defendants re-filed Form 101, but still did not identify JC & C Investments, LLC [Main Bankr. D.E. 10-1:2]. In Form 104, the Defendants still designated Merfe their largest "*unsecured creditor,*" failing to correct the misrepresentations and omissions of their original filing. [Main Bankr. D.E. 10-1:9; D.E. 2:1, 6]. Their representations as to the remaining unsecured creditors, including Margab and Federated, were also left unchanged. [D.E. 1:13 at ¶53].

**January 17, 2017**

16.     Merfe's Complaint also informs Defendants that their January 17, 2017 Form 106A/B filing, in which they identified buildings, land, and real estate they own or have an interest in. In this form, Defendants still concealed that the 158 Hialeah property was owned by JC & C Investments. [Main Bankr. D.E. 26:1]. In Part 4, they were required to identify financial assets, including any "interest in an LLC." Defendants still did not identify JC & C Investments, LLC. [Main Bankr. D.E. 26:5 at No. 19]. [D.E. 1:13 at ¶54].

17.     The Complaint also alleges that while Defendants identified the real property located at 680 W. 15 Street, they represented that Ms. Morales owned that property. [Main Bankr. D.E. 26:1]. As noted at ¶3 above, Ms. Morales does not own this property. She quit claimed her interest in this property to Mr. Morales and her adult children. [D.E. 1:13 at ¶55].

18.     Merfe also alleges that in Part 1 of Form 106A/B, the Defendants still conceal Ms. Morales' $300,000 (31.79%) interest in the Church mortgage [Main Bankr. D.E. 26:1]; doing so again in Part 4 at ¶30 ("unpaid loans you made to someone else")[Main Bankr. D.E. 26:7], and yet again at ¶33 ("[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment"), ye still making no mention of the Church foreclosure litigation. [Main Bankr. D.E. 26:8]. [D.E. 1:13 at ¶55].

19.     Merfe's Complaint also notes that it was not until the catchall provision("financial assets you did not already list")[Main Bankr. D.E. 26:8], that the Defendants make reference to the Church mortgage, and even then, they misrepresent the asset as a "***contingent/Disputed loan to Group lender to fund mortgage of building owned by SeeAttachment 2...***" [Main Bankr. D.E. 26:8 at ¶35] "...***Centro evangelistico La roca. Mortgage garnished by Merfe Construction amount ot***

*[sic]debtor unknown and doubtfull [sic]*." [Main Bankr. D.E. 26:11].  Plaintiff also points out that while Defendants reference the "LaRoca Mortgage" at Part 5, ¶38, they misrepresent the  "current value of the portion you own" as being  "*0.00*." [Main Bankr. D.E. 26:8].  [Main Bankr. D.E. 26:8 at ¶35, ¶38; Main Bankr. DE 26:11]. [D.E. 1:13-14 at ¶¶56-58].

20.     The Complaint further states that at Schedule D, *Creditors Who Have Claims Secured by Property*, that the Defendants left Part 1 blank ("[j]udgment lien from a lawsuit"), fail to identify Merfe's judgment lien certificates [Main Bankr. D.E. 26:14], and misrepresent the nature of the proceedings supplementary as a "Lawsuit 08-40150 Eleventh Circuit, Miami-Dade County, Florida action claiming creach [*sic*] of contract, conveyence [*sic*], debt and other relief." [Main Bankr. DE 26:49]. At ¶59 of the Complaint, the Defendants still misrepresent Merfe as having a "nonpriority unsecured claim," which they claim is contingent, unliquidated and disputed, and for which Merfe has no lien on property. [Main Bankr. D.E. 26:20 at ¶4.14] [D.E. 1:14 at ¶59].

21.     Plaintiff's Complaint alleges that the Defendants again listed Federated's claim, this time only against Ms. Morales, but now represented that Federated's claim was"*[s]ubsumed in Merfe Construction Claim*" [Main Bankr. D.E.26:18, and 49], which  did not occur. The Defendants again list Margab as having a claim valued at $250,000, again the result of the "[c]rossclaim in lawsuit 08-01405 pending in the Circuit Court, Miami-Dade County, Florida" [Main Bankr. D.E.26:20, and 49], rather than identifying that claim being its mortgage interest in the Church note and mortgage. [ D.E. 1:15 at ¶60]

22.     The Complaint also points out that in their Statement of Financial Affairs ("SOFA"), the Defendants identify cases in which they were parties to a lawsuit as being: (a) Case No. 14-1364,

*pending*[5] and (b) Case No. 08-40150 (proceedings supplementary), and claim the proceeding supplementary case was "***concluded***" [Main Bankr. D.E. 26:41], which is absolutely false. The Defendants know Merfe's motion to foreclose on Ms. Morales' membership interests in JC & C Investments, LLC was to have been heard the next business day after they filed their petition. The SOFA also omits reference to Ms. Morales' status as party in the Church foreclosure case, and her request to be paid from the foreclosure sale of that property. [D.E. 1:15 at ¶61]

23.    Plaintiff's Complaints alleges that the updated SOFA still failed to identify the Defendants' ownership or connection as members of JC & C Investments, LLC, during the four year time frame before filing for bankruptcy. [Main Bankr. D.E. 26:47]. Mr. Morales concealed his prior status as sole member of this LLC which he had until November 20, 2016 when Judge Miller entered the Order on the second summary judgment in the proceedings supplementary. Ms Morales concealed that Judge Miller voided her deletion as a member of JC & C Investments, and restored her as the sole member of JC & C Investments. [D.E. 1:15 at ¶62].

## January 18, 2017

24.    Merfe's Complaint also informs Defendants that in their Case Management Summary filed January 18, 2017, that they continue to identify the total amount of all secured claims as "*none,*" while designating the total amount of the "unsecured claims" as *$763,472.* [Main Bankr.

---

[5]

Case No. 14-1364CA relates to Merfe's Complaint for Declaratory Relief filed in *Merfe Construction Corp. v. Juan Carlos Morales, et al.* After commencement of proceedings supplementary, on December 3, 2013, Mr. Morales filed a "Notice of Homestead." This is the same property referenced above at ¶3 and ¶16, which Defendants now claim that Ms. Morales owns (¶16), but which was previously quitclaimed by her to Mr. Morales and her adult children. (¶3 above). As a result of the quit claim, Merfe filed a Complaint for Declaratory Relief (Case No. 14-1364) , contended the transfer took place after Merfe filed for foreclosure in the proceedings supplementary. [D.E. 1:15 at fn. 6].

D.E. 33:2-3 at ¶8 b- c].  [D.E. 1:16 at ¶63].

25.    The Complaint also informs that the Defendants that they continue to misrepresent that the ALF (J.C. & C. ALF, LLC) is the owner of the 158 Hialeah property [Main Bankr. D.E. 33:2 at ¶9], which is not true.  As noted above, JC & C Investments, LLC is the owner the 158 property, not the ALF.  The Defendants know this.  [D.E. 1:16 at ¶64].

### Under Penalties of Perjury

26.    Merfe's Complaint  also informs Defendants that from the date of filing of their Petition, and throughout this proceeding, on various occasions, the Defendants declared or acknowledged "*under penalty of perjury that the information*" provided in their petition, filings, schedules and attachments is  "true and correct." [Main Bankr. D.E. 10-1:6, 8; D.E. 2:1, 6;  Main Bankr. D.E. 4, Form 106 Dec; Main Bankr. D.E. 10-1:9; Main Bankr.  DE 10-1:13; D.E. 26:48]. [D.E. 1:16 at ¶63].

### The Creditors' Meeting

27.    Plaintiff's Complaint also contends that on January 18, 2017, at the Creditors' Meeting, Defendants testified under oath that they had reviewed the bankruptcy schedules and financial statements, and that they correctly listed all of their assets and debts therein.   [D.E. 1:17 at ¶68].

### MEMORANDUM OF LAW

In Defendants' Motion to Dismiss ("MTD") filed pursuant to Fed.R.Civ.P. 12(b)(6), they argue Plaintiff's Complaint fails to state a claim upon which relief can be granted. At pages 1 and 2 of the MTD, Defendants acknowledge the Federal Rules of Civil Procedure apply. While they claim the Complaint violates Rule 8(a)(2), which requires that a complaint set forth a "short and

plain statement of the claim showing that the pleader is entitled to relief," Defendants also contend that Rule 9(b) requires that allegations of fraud be pleaded "with particularity." The inherent conflict in Defendants' argument is immediately apparent. On one hand, they contend that the Complaint violates the general pleading standard of Rule 8(a)(2), while on the other, they concede that allegations of fraud must be made with factual particularity as required by Rule 9(b).

A Rule 12(b)(6) motion to dismiss is a motion attacking the legal sufficiency of a complaint. The test for deciding a motion to dismiss is whether the facts alleged, if proven, would entitle the plaintiff to relief. *SEC v. Warner*, 652 F.Supp. 647, 651 (S.D. Fla. 1987)(citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff. *United States v. Pemco Aeroplex, Inc.*, 166 F.3d 1311, 1313 (11th Cir. 1999). In doing so, the court must then decide whether those facts plausibly give rise to a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968, 1975 (2007). "Facial plausibility" is established "when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Thus, a complaint must contain factual allegations raising a right to relief above a speculative level. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)(citations omitted). See also *Iqbal*, 556 U.S. at 679. From a practical standpoint, this standard requires the complaint to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic*, 127 S. Ct. at 1969. The factual allegations within the Complaint are adequately set forth, with sufficient particularity, thereby meeting the "facial plausibility" standard required by *Twombly*.

While the general pleading standard of Rule 8(a)(2) applies to most matters, allegations of fraud require a heightened pleading standard. Fed.R.Civ.P. 9(b), provides that "a party must state with particularity the circumstances constituting fraud or mistake. To satisfy this requirement of pleading with particularity, "the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). Dismissal based on the plaintiff's failure to plead fraud with particularity under Rule 9(b) is the equivalent of a Rule 12(b)(6) dismissal for failure to state a claim for relief. *Carroll v. Farooqi*, 486 B.R. 718, 724 (N.D. Tex. 2013).

Counts 1, 2 and 4 of Plaintiff's Complaint sound in fraud. For example, Count 1 alleges the Defendants acted "with an intent to hinder, delay, *or defraud a creditor."* 11 U.S.C. 727(a)(2)(A). In Count 2, Plaintiffs contend  Defendants have "*knowingly and fraudulently, in or in connection with the case ... made a false oath or account*." 11 U.S.C. § 727(a)(4).  In Count 4, Plaintiffs contend Defendants  committed one or more acts specified in §727(a) (2), (4) or (5), on or within one year before the date Defendants filed their bankruptcy petition, either during the bankruptcy proceeding, or in connection with the circuit court proceedings supplementary, concerning an insider, Mr. Morales, or although having transferred the asset more than one year before the bankruptcy filing, they continued to conceal same into the one year period or  continued using that property.  As to Count 3, where Plaintiff contends Defendants have violated 11 U.S.C. Section 727(a)(5) by failing to explain how Ms. Morales' assets, her lien interest in the $975,000 Church mortgage ($300,000/31.79%), her sole membership interest in JC & C Investments, LLC, and the 158 Hialeah property, of which JC & C Investments, LLC is the owner, have simply vanished as assets owned

-13-

by Ms. Morales, this does not contain a fraud element. Still, it arises from fraudulent conduct.

The most obvious flaw in Defendants' motion is the failure to recognize that Merfe may plead the claims set forth in each count in the alternative. Fed.R.Civ.P. 8(e)(2) provides that: "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count... or in separate counts.... A party may also state as many separate claims or defenses as the party has, regardless of consistency...." See also *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004). The rule specifically allows a federal litigant the opportunity to pursue alternative theories of recovery, *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540-1541 (11th Cir. 1986), and allows inconsistency in both legal and factual allegations, *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir.1970), and without being subject to a motion to dismiss. See *Beard v. Dominion Homes Financial Services, Inc.*, 2007 WL 2137944, *6 (S.D. Ohio)(citing *Kentucky Home Mut. Life Ins. Co. v. Duling*, 190 F.2d 797 (6th Cir.1951)). The rule is even interpreted to mean a court "may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim." *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir.1994); *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.), cert. dismissed, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). This type of "flexible pleading [is] essential to a full presentation of all relevant facts and legal theories at trial and final settlement of disputes on their merits" *United States v. G & H Machinery*, 92 F.R.D. 465, 466 (S.D. Ill.1981). The Defendants' contention that the Complaint is not a shotgun complaint, one in which successive counts incorporate by reference the allegations made in the preceding count and so on, leading to a situation where most of the counts contain irrelevant factual allegations and legal conclusions. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). *Magluta v. Samples*,256 F.3d 1282,

1284 (11th Cir. 2001).  See also *Nehrer v. Bank of Am., N.A.*, No. 6:11-CV-50-ORL-31DAB, 2011 WL 1883041, at *2 (M.D. Fla. May 17, 2011)(("Each of the claims begins with a sentence incorporating every single sentence that preceded it. The Complaint is a quintessential shotgun pleading.").

Examination of the Plaintiff's complaint reveals it does not incorporate the allegations of one count into the next and so forth. Instead, each individual count makes reference to, and incorporates, the general factual allegations of the Complaint, which are common to all counts.  This being so, it is *not* a shotgun pleading. See *Kassem v. Martin*, No. 5:15-CV-623-OC-30PRL, 2016 WL 3079952, at *1 (M.D. Fla. June 1, 2016) (declining to find a complaint a shot gun pleading when "it incorporate[d] the sixty-five general allegations from the beginning of the complaint into each count, [but did] not incorporate allegations of preceding counts into each count"). See also *Clark v. Sch. Bd. of Collier Cnty.*, Case No. Case No: 2:13-cv-820-FtM-29MRM, *7-8, n. 1 (M.D. Fla., April 22, 2016)(noting that a complaint which simply incorporates jurisdictional and general allegations into each count, but does not incorporate the substance of each preceding claim into the next claim, is not a shotgun pleading, even if this results in surplusage in a particular count). Thus,  incorporation of the general allegations into a specific count is not prohibited by the rules of civil procedure.  This is a perfectly acceptable pleading practice.

The general allegations set forth specific and relevant facts, not legal conclusions.  The factual allegations  demonstrate the manner in which these Defendants hindered, delayed and defrauded Plaintiff, as Ms. Morales' creditor; the specific dates and manner in which these Defendants  knowingly and fraudulently gave false oath or account; that Ms. Morales' assets, her $300,000 mortgage interest in the Church property, her sole membership interest in JC & C

Investments, LLC, and that same LLC's ownership of the 158 Hialeah property, suddenly and inexplicably vanished as assets once Defendants filed their Chapter 11 petition; and, that even now, the Defendants continue to conceal Ms. Morales' assets from this Court.   Nor does the Compliant contain legal conclusions.  Instead, it clearly and succinctly states the facts supporting each counts of the Complaint.[6]

---

[6]

It is notable that the Defendants do not claim that the individual counts fail to identify the facts that support them. they do not point to even one particular purportedly defective count. See e.g., *CS Bus. Sys., Inc. v. Schar*, Case No: 5:17-cv-86-Oc-PGBPRL. *3-4 (M.D. Fla., March 28, 2017).

As to Count 1, a party seeking denial of discharge under §727(a)(2) must show the following elements by a preponderance of the evidence: (1) that the act complained of was done at a time subsequent to one year before the filing of the petition or after the date of the filing of the petition; (2) with intent to hinder, delay, or defraud a creditor of the property under the Bankruptcy Code, (3) that the act was that of the debtor or his duly authorized agent, and (4) that the act consisted of transferring, removing, destroying, or concealing any of the debtor's property. *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir.2008).  It should be noted that he doctrine of continuing concealment acts to extend the reach of §727(a)(2)(A) to transfers that occurred more than a year before bankruptcy. *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554-555 (5th Cir.1987).

As to Count 2, in order to deny a debtor discharge pursuant to §727(a)(4)(A), making a false oath or account, two elements must be proven. First, the debtor's oath or account must have been knowingly and fraudulently made; and second, it must be related to a material fact. *In re Ingersoll*, 124 B.R. 116, 122 (M.D. Fla. 1991)(citing *In re Syrtveit*, 105 B.R. 596, 598 (Bankr.D.Mont.1989)).

As to Count 3, for a plaintiff to prevail on a  §727(a)(5) claim to deny discharge, he must demonstrate that (1) the debtor has experienced a loss or deficiency of assets; and (2) the debtor cannot provide a satisfactory explanation for such loss. 11 U.S.C. § 727(a)(5).  See *In re Moore*, Case No 07-70948-CMS-7, *18 (N.D. Ala. 1/30/2009).

As to Count 4, § 727(a)(7), a court will deny a debtor a discharge if he "debtor has committed any act specified in [§727(a)(2) or (3)], on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." *Korman v. EagleBank*, Case No.: PWG-12-3449, *13 (D, Md., July 22, 2013).  In that Mr. and Ms. Morales are married, they are each considered  "insiders." See  11 U.S. Code § 101 (31)(A)(I).

-16-

Assuming *arguendo*, that Plaintiff's pleading is deemed a "shotgun" pleading, which it denies, the Eleventh Circuit has explained that the proper remedy for a shotgun pleading is not a motion to dismiss pursuant to Rule 12(b)(6).  See *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th 1996).  Instead, the remedy is actually to seek a more definite statement under Rule 12(e).  *Id*. See also See also *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 982-984 (11th Cir. 2008)(after discussing the various adverse consequences which inevitably result if a "shotgun" complaint is not remedied early on in litigation, the court explained that these consequences can be avoided by defendant moving for a more definite statement).  Should this Court conclude that a more definite statement is required, Merfe requests permission to replead.

Nor does the Complaint violate Rule 7010(b) or Fed.R.Civ.P. 10 (b), *Paragraphs; Separate Statements,* which requires "a party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." The purpose of Rule 10(b) is to give a defendant fair notice of the claims against him and the grounds supporting the claims. *Intercom Ventures, LLC v. FasTV, Inc.*, 2013 WL 2357621 (N.D. Ill. May 28, 2013).  Examination of the complaint reveals each Section 727(a) claim is set forth in separate counts. Thus, Plaintiff has complied with Rule 10(b). Even if this were no so, noncompliance with Rule 10(b) is rarely a basis for dismissing a complaint unless the complaint is not understandable and does not provide defendants with fair notice of the claims asserted against a defendant. *Landmark Document Servs., LLC v. Omega Litig. Solutions*, LLC, Case No. 05 C 7300, 2006 WL 2861098 (N.D. Ill. Sept. 29, 2006) (internal quotations omitted). Should this Court disagree, Plaintiff requests leave to replead. *Erickson v. Hunter*, 932 F.Supp. 1380, 1384, n.2 (M.D. Fla. 1996)(citation omitted).

WHEREFORE, Plaintiff, MERFE CONSTRUCTION, CORP., prays Defendants', JUAN

CARLOS MORALES and MIRTA MORALES,  Motion to Dismiss is denied in its entirety.

> Law Office of Michael Garcia Petit, P.A.
> Attorney for MERFE CONSTRUCTION
> 14100 Palmetto Frontage Road, Suite 106
> Miami Lakes, Florida 33016
> Phone (786) 245-7750
> Fax (786) 245-7751
> Email: michael@michaelgarciapetitpa.com
> Mail@michaelgarciapetitpa.com
>
>
> By:  /s/Michael Garcia Petit
> MICHAEL GARCIA PETIT, ESQ.
> FBN: 656216

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for

the Southern District of Florida and I am in compliance with the additional qualifications to practice

in this Court set forth in Local Rule 2090-1(A) and have made a good faith attempt to resolve the

issues prior to the filing of the Notice of Appearance and that a true and correct copy of this Notice

of Appearance was sent via email to Richard Siegmeister, Esq., 1800 SW 1 Ave #304, Miami, FL

33129, Email: rspa111@att.net; and all others set forth in the NEF, on May 5, 2017.


> By:  /s/Michael Garcia Petit
> MICHAEL GARCIA PETIT, ESQ.